**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-02636-WJM-CBS

STEWART TITLE GUARANTY COMPANY, a Texas corporation,

     Plaintiff,

v.

JAY H. WILLIAMS, an individual, and
NEWTOWN TEN, INC., a Colorado corporation,

     Defendants.

---

**ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**
**AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Stewart Title Guaranty Company ("Plaintiff" or "Stewart") brings this action against Defendants Jay H. Williams ("Williams") and Newtown Ten, Inc. ("Newtown") alleging that Defendant Newtown and its guarantor Defendant Williams borrowed money in the form of a promissory note and failed to pay back the money. Before the Court are: (1) Plaintiff's Motion for Partial Summary Judgment on Plaintiff's First and Fifth Claims for Relief ("Plaintiff's Motion") (ECF No. 27); and (2) Defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 37).

For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is granted, and Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND

**A.    Factual Background**

The following facts are taken from the record and are either undisputed or

viewed in the light most favorable to Defendants:

Plaintiff Stewart is a Texas corporation.  (Scheduling Order, "Undisputed Facts" (ECF No. 18) at Section 4(a)(hereinafter, "Undisputed Facts").)  Defendant Newtown is a Colorado corporation.  (*Id*. at 4(b).)  Defendant Williams is an individual who resides in Colorado.  (*Id*. at 4(c).)

The real property underlying this dispute is vacant land located in El Paso County, Colorado (the "Property").  (*Id*. at 4(d).)  On December 12, 1991, the Federal Deposit Insurance Corp., in a receivership capacity, conveyed the Property to Williams by quitclaim deed.  (*Id*. at 4(e).)  On June 27, 2000, Williams conveyed the Property to Newtown by warranty deed.  (*Id*. at 4(f).)

On November 9, 2007, Newtown executed a $500,000.00 promissory note (the "Note") in favor of Randall Realty & Investment Co. (together with any successor in interest, "Randall Realty").  (*Id*. at 4(l).)  In conjunction with the Note, and in consideration for the payment obligations contained therein, Randall Realty advanced $500,000.00 to Newtown.  (Aff. of Randall Karsh, ¶ 4 ("Karsh Affidavit"), attached as Exhibit C to Plaintiff's Motion.)  As security for the Note, a Deed of Trust from Newtown to Randall Realty, which encumbered the Property (the "Randall Realty Deed of Trust"), was recorded in the real property records of El Paso County, Colorado.  (Undisputed Facts at 4(n).)  The Note was secured, *inter alia*, by the absolute and unconditional personal guarantee of Williams (the "Guaranty").  (Guaranty, attached as Exhibit D to Plaintiff's Motion.)

On March 13, 2009, Newtown conveyed the Property to Trend Investments, LLC ("Trend") by warranty deed recorded in the real property records of El Paso County, Colorado.  (Undisputed Facts at 4(q),(r).)  1st Denver Title, Inc. ("Denver Title") was the company that conducted the closing of the sale of the Property from Newtown to Trend (the "Trend Closing").  (*Id*. at 4(s).)  Trend also granted a deed of trust for the benefit of California Bank & Trust ("CB&T") on May 8, 2009 which encumbered the Property (the "CB&T Deed of Trust").  (*Id*. at 4(u).)  Denver Title also conducted the loan closing between Trend and CB&T.  (*Id*. at 4(y).)

In conjunction with the loan closing between Trend and CB&T, CB&T requested and paid for a $1,660,000.00 lender's policy of title insurance that was issued by Denver Title on May 13, 2009 and was underwritten by Stewart (the "CB&T Policy"). (*Id*. at 4(z).)  Denver Title was the agent of Stewart for purposes of issuing title policies to borrowers and lenders, which were underwritten by Stewart.  (*Id*. at 4(t).)  As part of the title examination for the CB&T Policy, Joey Grant, a Denver Title examiner, located and reviewed the Randall Realty Deed of Trust.  (Request for Admission No. 3, attached as Exhibit A to Defendants' Motion.)  Joey Grant concluded that the Randall Realty Deed of Trust did not encumber the Property.  (*Id*. at Request 4.)

On October 22, 2009, Newtown and Randall Realty entered into an amendment of the Note (the "Note Amendment") in which Newton agreed that the principal balance owed pursuant the Note would be increased to $578,336.00.  (Undisputed Facts at 4(dd)(ee).)  In conjunction with the Note Amendment, Williams executed an Acknowledgment and Agreement of Guaranty (the "Acknowledgment of Guaranty"),

whereby he: (1) acknowledged receipt of the Note Amendment; (2) consented to its terms; and (3) reaffirmed his obligations pursuant to the Guaranty. (Acknowledgment of Guaranty, attached as Exhibit F to Plaintiff's Motion.)

On January 3, 2011, Randall Realty called for a default under the Note. (Undisputed Facts at 4(gg)). On September 2, 2011, Stewart purchased the Note from Randall Realty. (ECF No. 7, ¶ 7.) Stewart paid Randall Realty $890,000.00 in consideration for the assignment of the Note; of this amount, $861,424.00 was the unpaid principal and default interest owed on the Note as of September 2, 2011. (ECF No. 27, at Exhibit C, ¶¶ 14-15.) Since September 2, 2011, Stewart has had the right to foreclose on the Property, but has chosen not to do so. (Request for Admission No. 10, attached as Exhibit A to Defendants' Motion.)

On October 26, 2011, Stewart, through counsel, made a formal demand on Williams to satisfy all amounts owed under the Note. (October 26, 2011, Letter, attached as Exhibit L to Plaintiff's Motion.) Williams has made no payments to Stewart pursuant to the Guaranty or the Note, and the Note remains unpaid. (Yalung Affidavit, ¶ 7.) As of the date of this Motion, the amount of unpaid principal and default interest due under the Note and the Guaranty is $1,018,604.38, with a *per diem* of $849.62. (*Id.*, ¶ 10.)[1]

---

[1]      Defendants "deny that the amount set forth as owed under the Note is accurate because no calculation is provided in the Motion or any exhibit attached thereto." (ECF No. 30 at 3.) However, Paragraph 15 of the Karsh Affidavit, which was attached as Exhibit C to Plaintiff's Motion, provides that "$861,424.00 of the Stewart Payment reflected the unpaid principal and default interest owed on the Note as of the date of the Stewart Assignment, excluding attorneys' fees and costs." (Karsh Affidavit, ¶ 15.) Plaintiff's Motion also lays out calculations showing that "since Stewart acquired the Note, $157,180.38 of default interest has accrued on the Note." (ECF No. 27 at 13.) Defendants have asserted no facts or affidavits that contradict the Karsh Affidavit or Plaintiff's calculations. Therefore, the combination of the Karsh

### B.     Procedural History

Plaintiff filed its initial Complaint on October 10, 2011 (ECF No. 1) and filed an

Amended Complaint on November 8, 2011 (ECF No. 7).  Based on the circumstances

described above, Plaintiff brings three claims against Defendants for breach of contract

(Claims One, Two, and Five) and two claims for fraud (Claims Three and Four).  (*Id.*)

On March 5, 2012, Plaintiff filed a Motion for Partial Summary Judgment

pursuant to Federal Rule of Civil Procedure 56 asking the Court to grant summary

judgment in its favor on Plaintiff's First and Fifth Claims for breach of contract.[2]  (ECF

No. 27.)  Specifically, Plaintiff seeks summary judgment on its First Claim for breach of

contract for default under the Note against both Defendants, and on its Fifth Claim for

breach of contract for default under the Guaranty against Defendant Williams.  (*Id.*)  On

March 29, 2012, Defendants filed their Response to Plaintiff's Motion (ECF No. 30), and

Plaintiff filed its Reply in Support of its Motion on April 13, 2012 (ECF No. 31).

On June 18, 2012, Defendants filed their Motion for [Partial] Summary Judgment

asking the Court to grant summary judgment in their favor on Plaintiff's fraud claims

(Claims Three and Four), and on their affirmative defense that Plaintiff failed to mitigate

its damages relating to its breach of contract claims.  (ECF No. 37.)  On August 31,

2012, Plaintiff filed a Response to Defendants' Motion (ECF No. 48), and Defendants

---

Affidavit and the aforementioned calculations sufficiently sets forth the amount owed under the
Note, excluding attorneys' fees and costs, as of the filing of Plaintiff's Motion.

[2]     Neither party has moved for summary judgment on Plaintiff's Second Claim
against Defendants for Breach of Contract based on contractual indemnification.  (ECF No. 7.)
Plaintiff's Second Claim seeks a judgment against Newtown, jointly and severally with Williams,
for breach of an Indemnification Agreement, in the amount of $890,000.00 (the purchase price
of the Note). (*Id.*)

filed their Reply in Support of their Motion on September 14, 2012 (ECF No. 52).[3]

These Motions are now ripe for resolution.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Where the non-movant

---

[3]     On December 9, 2011, Defendants filed a Motion to Dismiss Plaintiff's fraud claims.  (ECF No. 15.)  On July 12, 2012, Defendants' Motion to Dismiss was denied as moot because Defendants' Motion for Summary Judgment incorporates the same arguments raised in their Motion to Dismiss.  (ECF No. 40.)  *See Drake v. City and Cty. of Denver*, 953 F. Supp. 1150, 1152 n.1 (D. Colo. 1997) (holding that motions to dismiss are "subsumed by the Motions for Summary Judgment and are denied as moot.").

bears the burden of proof at trial, the non-movant must then point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

### III.  ANALYSIS

Plaintiff has asked the Court to grant summary judgment in its favor on its First and Fifth claims for breach of contract.  Defendants seek summary judgment on Plaintiff's Third and Fourth claims alleging fraud against Defendants, and on their affirmative defense that Plaintiff failed to mitigate its damages relating to its breach of contract claims.  The Court will discuss each Motion in turn below.

### A.      Plaintiff's Partial Motion for Summary Judgment

A claim based on a failure to make a payment on a promissory note is, in essence, a breach of contract claim.  *See Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001).  A party asserting a breach of contract claim must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to plaintiff.  *See W Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

A guaranty is a form of contract and the same breach of contract elements apply to a breach of a guaranty.  *See A.R.A. Mfg. Co. v. Cohen*, 654 P.2d 857, 859 (Colo. App. 1982). Where a contact and a guaranty of contract are formed concurrently, the consideration for the former may also serve as the consideration for the latter.  *Colo.*

*State Bank of Denver v. Rothberg*, 474 P.2d 634, 636 (Colo. App. 1970).  A legal detriment incurred by the promisee in reliance on the guaranty contract may also serve as consideration for the guaranty contract.  *Id*.

In establishing the existence of a contract, a party must show that the contract was properly formed.  *Indus. Prods. Int'l v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997).  Contract formation requires mutual assent to an exchange between competent parties – where an offer is made and accepted – regarding a subject matter which is certain, and for which there is a legal consideration.  *Id.*

After reviewing Plaintiff's arguments and evidence, the Court finds that Plaintiff has met its initial burden of setting forth sufficient evidence to show that there are no genuine disputes of material facts on its First and Fifth breach of contract claims, and that it is entitled to judgment as a matter of law on these claims.  *See Celotex*, 477 U.S. at 325.  Plaintiff has submitted sufficient evidence that the Note is two party commercial paper promise by Newtown, the maker, to pay money to Randall Co., the payee/bearer. (Undisputed Facts at 4(l); Karsh Affidavit ¶ 4); *see* C.R.S. §§ 4-3-103(a)(9) and 4-3-104(e).  Further, the Note is also a negotiable instrument that is: (1) an unconditional, (2) promise by Newtown, (3) to pay a fixed amount of money to Randall Co.  (Karsh Affidavit, ¶ 8); *see* C.R.S. 4-3-104.  The Note was subsequently negotiated from Randall Realty to Stewart, and Stewart obtained all of Randall Realty's interest in the Note.  (Yalung Affidavit, ¶¶ 3, 6; Karsh Affidavit, ¶ 10); *see* C.R.S. § 4-3-201(a)). Therefore, the undisputed facts demonstrate that the Note is: (1) a valid contract, (2) which Randall Co. performed, and (3) Newtown has failed to perform, (4) a result of

which Stewart, as assignee, has suffered damages.[4]  (Yalung Affidavit, ¶¶ 7; 10.)

Plaintiff has also put forth sufficient evidence demonstrating that there was mutual assent to the Guaranty.  The Guaranty provides for such a legal detriment, as Randall Realty represented in the Guaranty that it would not lend money to Newtown absent Williams' guarantee.  (Guaranty at 1; Acknowledgment of Guaranty, Undisputed Facts, ¶ p) ("Lender is unwilling to make the loan described above and/or permit Borrower to incur additional Indebtedness unless [Williams] enters into this Contract of Guaranty").  Therefore, the undisputed facts demonstrate that the Guaranty is: (1) a valid contract, (2) which Randall Realty performed, and (3) Williams has failed to perform, (4) the result of which has caused Stewart, as assignee, to incur damages.  (*Id*.; Yalung Affidavit, ¶¶ 7; 10.)

Defendants do not dispute that Plaintiff is entitled to judgment as a matter of law on these breach of contract claims.  (ECF No. 30 at 3-5.)  Rather, Defendants argue that the Note's "Forum Selection Clause" makes it mandatory that "the District Court for the City and County of Denver, Colorado has exclusive jurisdiction to consider and determine all matters involving the Promissory Note" and, therefore, forum and jurisdiction before this Court are improper.[5]  (*Id*. at 4.)

---

[4]      Since Stewart acquired the Note, $157,180.38 of default interest has accrued on it.  (ECF No. 27 at 12-13.)  Adding this to the amount of unpaid principal and default interest owed to Randall Realty at the time Stewart purchased the Note, Plaintiff seeks judgment on the Note and the Guaranty in the amount of $1,018,604.38, with a *per diem* of $849.62.  (*Id*.)  Under the terms of the Note, both Newtown and Williams are jointly and severally liable for this amount.  (Note, ¶ 16) ("This Note is the joint and several obligation of Maker…[and] guarantors…without regard to liability of any other party and is binding on them…").

[5]      While its unclear from their Response to Plaintiff's Motion, it appears that Defendants are arguing that this action should be in Denver, Colorado state court, as opposed to Federal District Court for the District of Colorado.

"The enforceability of a forum selection clause has long been recognized by the Supreme Court." *Excell, Inc. v. Sterling Bailer & Mechanical, Inc.*, 916 F. Supp. 1063, 1064-1065 (D. Colo. 1996) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). The Forum Selection Clause in the Note states:

> Venue for any legal action relating to the interpretation or enforcement of the provisions of this Note or the obligations arising hereunder shall be proper in the City and County of Denver, State of Colorado. Maker and any guarantor or accommodation party hereof hereby voluntarily submit themselves to the personal jurisdiction of the District Court for the State of Colorado sitting in the City and County of Denver and agree that such forum shall have exclusive jurisdiction over the parties pertaining to this Note including, but not limited to matters involving the collection, enforcement or interpretation hereof.

(Note at 7, attached to ECF No. 30.)

After reviewing the briefs and the relevant case law, the Court finds even if the Forum Selection Clause here were mandatory, Defendants have waived any right they may have previously had to enforce a change in venue.

On December 9, 2011, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) seeking dismissal of Plaintiff's fraud claims.  (ECF No. 7.)  Defendants did not seek a venue transfer in their Motion to Dismiss, nor have Defendants ever filed a separate motion to transfer venue.  Instead, Defendants have waited until their Response to Plaintiff's Motion to first make the argument that venue before this Court is improper.  (ECF No. 30 at 3-6.)

Forum selection clauses involving transfers of venue fall within the purview of Fed. R. Civ. P. 12(b).  *See Riley v. Kingsley Underwriting Agencies, Ltd*, 969 F.2d 953, 956 (10th Cir. 1992).  Fed. R. Civ. P. 12(b) states that "[a] motion asserting [an improper venue defense] must be made before pleading if a responsive pleading is

allowed."  Further, this Court's Practice Standards specifically state that "all requests for relief under any part of Fed. R. Civ. P. 12 must be brought in a single motion."  WJM Revised Practice Standards, III.D.2.  Accordingly, by failing to move to transfer venue in their initial Motion to Dismiss, Defendants have waived this defense.[6]

For the reasons stated above, Plaintiff is entitled to judgment as a matter of law on its First Claim for breach of contract for default under the Note against both Defendants, and on its Fifth Claim for breach of contract for default under the Guaranty against Defendant Williams.

**B.    Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on Plaintiff's Third and Fourth claims alleging fraud against Defendants, and on their affirmative defense that Plaintiff failed to mitigate its damages relating to its breach of contract claims.

**1.  Plaintiff's Fraud Claims**

Plaintiff's fraud claims allege that Defendants made false statements in a lien affidavit and the Note Amendment executed by Defendant Williams.  (ECF No. 7, ¶¶ 97-114.)  With respect to Plaintiff's Third Claim based on the lien affidavit, Plaintiff alleges that it was defrauded when it relied on Defendants' failure to disclose the Randall Realty Deed of Trust before it issued the CB&T Policy.  (*Id*., ¶ 101.)  With respect to Plaintiff's Fourth Claim, Plaintiff alleges that it was defrauded when Randall Realty relied on Defendants' false representations in the Note Amendment.  (*Id*., ¶¶ 106-114.)

---

[6]        Moreover, considering that the parties have already spent considerable time and resources litigating this action before this Court, permitting Defendants to assert enforcement of the Forum Selection Clause at such a late juncture would be unreasonable and inequitable. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 916 F. Supp. 1063, 1065 (D. Colo. 1996).

A party asserting a fraud claim under Colorado law must prove the following elements: (a) the defendant made a false representation of a past or present fact; (b) the fact was material; (c) at the time the representation was made, the defendant knew the representation was false or was aware that it did not know whether the representation was true or false; (d) the defendant made the representation with the intent that the plaintiff would rely on the representation; (e) the plaintiff relied on the representation; (f) the plaintiff's reliance was justified; and (g) this reliance caused damages to the plaintiff.  *See Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987).  A claimant has no right to rely upon a false representation if the claimant has access to information that would lead to the true facts.  *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994).

The Court finds that there are genuine disputes of fact as to whether Plaintiff relied upon any alleged false representations made by Defendants in the lien affidavit and the Note Amendment and, therefore, Defendants are not entitled to judgment as a matter of law on Plaintiff's fraud claims.  Specifically, Plaintiff has introduced evidence that Defendants intentionally made fraudulent representations to Randall Realty and Plaintiff in order to induce them to take actions that they would not otherwise have taken.  (Affidavit of Michael Cranmer ("Cranmer Affidavit"), ¶¶ 7, 8, 11, 12, attached as Exhibit 3 to ECF No. 48.; Undisputed Facts, ¶ 4.ff.)  Based upon this evidence, and other evidence set forth in the summary judgment briefs, a jury could reasonably find that Defendants did commit fraud against Plaintiff through false statements in the lien

affidavit and Note Amendment.[7]  As such, material disputes of fact exist regarding these claims, and Defendants' Motion for Summary Judgment on these claims is denied.

### 2.   Defendants' Affirmative Defense that Plaintiff Failed to Mitigate its Damages

Finally, Defendants seek summary judgment on their affirmative defense that Plaintiff failed to mitigate its damages relating to its breach of contract claims.  The burden of proving such an affirmative defense rests upon the defendant.  *See Western Distributing Co., v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992); *In re Ribozyme Pharm*, 209 F. Supp. 2d at 1111 (movant who bears burden of proof must submit evidence to establish every essential element of its affirmative defense).

"A party seeking recovery under a contract has a duty to mitigate its damages." *Westec Constr. Mgmt. Co. v. Postle Enters. I, Inc.*, 68 P.3d 529, 532 (Colo. App. 2002). "The defense of failure to mitigate damages applies when a plaintiff has failed to exercise reasonable care and diligence to minimize or lessen damages occasioned by defendant's conduct." *Id*. "A plaintiff's failure to mitigate damages is excused, however, if mitigation would require inordinate or unreasonable measures or if there were reasonable grounds for the failure to mitigate." *Id*. "For example, 'a party need not accept a modified contract in mitigation of its damages when the modified offer includes abandonment of any right of action for a prior breach as a condition of acceptance.'" *Id*. (internal citation and quotation omitted).

---

[7]       Because the Court finds that there are genuine disputes of fact as to whether Plaintiff relied upon any alleged false representations made by Defendants, the Court does not address Defendants additional arguments regarding these claims.

-13-

Here, Defendants contend that Plaintiff has had the right to foreclose on the Property since September 2, 2011, and that Plaintiff could have been repaid in full had it foreclosed.  (ECF No. 37 at 13-15.)  Therefore, Defendants argue, they are entitled to judgment as a matter of law on their affirmative defense because Plaintiff has failed to mitigate its damages by foreclosing on the Property.  (*Id.*)  In response, Plaintiff argues that forcing it to foreclose on the Property is directly contrary to the express language of the Note and Guaranty, and is contrary to Colorado law.[8]  (ECF No. 48 at 12-15.)

The Court finds that there are genuine disputes of fact precluding summary judgment on Defendants' affirmative defense that Plaintiff failed to mitigate its damages relating to its breach of contract claims.  There are disputes of fact as to whether Plaintiff could have mitigated its damages by foreclosing on the Property and, if so, by how much.  (Final Pretrial Order, 7.a.(2)); *see Westec*, 68 P.3d at 532 (a party's failure to mitigate its damages is excused if there were reasonable grounds for the failure to mitigate.)  Plaintiff has also submitted sufficient evidence to create a genuine dispute of material fact as to whether its contractual obligations to its insured are reasonable grounds for its decision not to foreclose on the Property.  (Note, ¶ 5; Deposition of Judith Bregman, at 30:5-32:16, attached as Exhibit E to ECF No. 52.)  Further, Plaintiff

---

[8]      The Note contains the following language:

> The legal remedies of Holder as provide in this Note and the Loan Documents or otherwise at law or in equity, shall be cumulative and concurrent, and may be pursued singularly, successively or together against Maker, the real property described in the Security Documents…, or any surety, guarantor or endorser hereof at the sole discretion of Holder.

(Note, ¶ 5.)

has submitted evidence that the Guarantee was absolute and unconditional, and that Plaintiff does not need to pursue a claim against Defendant Newton or foreclose on the Property before proceeding against Defendant Williams.  (Guaranty, ¶ 1) ("Guarantor absolutely and unconditionally guarantees payment to Lender of the Indebtedness,…"); *see First Comm. Corp. v. Geter*, 547 P.2d 1291, 1293 (Colo. App. 1976) ("[T]he document is an absolute guaranty and the obligation of the guarantors may be immediately enforced, without the necessity of an action against the principal obligor or collateral").

Based on the genuine disputes of material facts described above, Defendants' Motion for Summary Judgment on their affirmative defense that Plaintiff failed to mitigate its damages relating to its breach of contract claims is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Plaintiff's Motion for Partial Summary Judgment on Plaintiff's First and Fifth Claims for Relief (ECF No. 27) is GRANTED;

2.   Defendants' Motion for Summary Judgment (ECF No. 37) is DENIED:

3.   Judgment shall enter against Defendant Newtown Ten, Inc., jointly and severally with Defendant Jay H. Williams, for its breach of the Note, in the amount of $1,018,604.38, plus a *per diem* of $849.62, until the Note is paid in full, subject to any offsets resulting from future amounts collected from Williams under the Guaranty;

4.   Judgment shall enter against Defendant Jay H. Williams, jointly and severally with Defendant Newtown Ten, Inc., for his breach of the Guaranty, in the amount

of $1,018,604.38, plus a *per diem* of $849.62, until the Note is paid in full, subject to any offsets resulting from amounts collected from Newtown under the Note;

5.   Plaintiff's Second, Third, and Fourth claims shall proceed to trial on April 10, 2013.


Dated this 25th day of October, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge